## Case No. 6,798.
### HOWLAND v. MARINE INS. CO. OF ALEXANDRIA.
[2 Cranch, C. C. 474.] [1]
Circuit Court, District of Columbia. May Term, 1824.

MARINE INSURANCE—STRANDING OF SHIP—ABANDONMENT TO UNDERWRITERS—NEGLIGENCE OF MASTER—ACTION ON POLICY.

1. The mere stranding of a ship on a bar will not, of itself, justify the abandonment of the ship to the underwriters, but the master and crew are bound to use their best exertions to get her off.

2. If the stranding were produced by the want of skill on the part of the master, or by the want of that degree of care and prudence which a skilful and prudent master of such a vessel would exercise in similar circumstances, or, if after she was stranded he neglected to use all reasonable means to save her, the loss is not covered by the policy; but if the captain and crew were competent, and all reasonable care was used to avoid the accident, and all reasonable exertions were used, honestly, and with good faith, to prevent the wreck and destruction of the property, and it was, nevertheless, lost, then the loss is within the policy.

[Cited in Franklin Ins. Co. v. Humphrey, 65 Ind. 557.]

3. If the stranding was of such a character, as to render it, in the exercise of good judgment, hopeless to get the vessel off, then the abandonment was justified, and the loss was within the policy.

4. If the bar, on which a vessel is stranded, is out of the due course of the voyage insured, and the deviation were voluntary, or produced by want of skill in the navigation of the ship, or by want of that degree of care and diligence on the part of the master and crew, which a prudent and skilful master and crew would use in like circumstances, the insurers are discharged.

5. The court will not instruct the jury upon a question of art depending upon nautical skill, and upon which the court could not give an opinion without consulting persons skilled in nautical matters.

6. The question of negligence of the master of a vessel in conducting the voyage is to be left to the jury under all the circumstances of the case as they appear in evidence.

7. Upon a valued policy, by which, "T. H. H. on account of himself and J. J." caused a ship to be insured by the defendants in the sum of $10,000, T. H. H. may alone maintain an action, in his own name, and recover judgment for the whole amount insured. although the declaration avers that the plaintiff and the said J. J. were interested in the ship to the amount insured.

This was an action upon a policy for $10,-000 on the ship New Jersey, valued at the

1 [Reported by Hon. William Cranch, Chief Judge.]

sum insured, on a voyage to and from Liverpool to Alexandria, by which policy "Thomas H. Howland, on account of himself and John Jackson," caused insurance to be made, &c., and the declaration, which was in the name of T. H. H. alone, averred that the plaintiff and the said John Jackson were interested in the ship to the amount insured, and that in the prosecution of her voyage she was stranded on the 10th of August, 1820, and totally lost by the perils of the sea. On the 10th of August, she stranded on Southampton bar, on the shore of Long Island; the cargo was taken out, and she floated over the bar into the inlet between the bar and the shore of Long Island, where it was found so difficult to get her off, and she was supposed to be in so dangerous a situation as to justify her sale for the benefit of all concerned. She was sold for $1,000, and in less than a week was totally destroyed by a storm. She was abandoned to the underwriters, of which they had notice on the 17th of August. The defence set up was negligence and want of skill in the master, and want of proper exertions to get the ship off.

THE COURT (THRUSTON, Circuit Judge, absent), on the prayer of the defendant's counsel (Mr. Swann and Mr. Jones), instructed the jury, that the mere stranding or grounding of the ship on the bar, was not, of itself, a loss or accident which justified the abandonment of the ship; but the master and crew were bound to use their best exertions to get her off and save her, notwithstanding such accident; that if the stranding were in the first instance produced by the want of skill or care of the master; or if, after she was stranded, he neglected to use the proper and necessary means and exertions to save her from consequent wreck and destruction, then the loss is not within the policy, and the plaintiff is not entitled to recover.

THE COURT, also, at the prayer of the plaintiff's counsel (Mr. Wirt), instructed the jury, that if they should be of opinion from the evidence, that the stranding of the ship was of such a character as to render it, in the exercise of good judgment, hopeless to get the vessel off, then the said abandonment was justified, and the loss is within the policy. That the master and crew of the said vessel, were, after she was stranded, bound to use their best exertions to get her off. That if the stranding were produced, in the first instance, by the want of skill on the part of the master, or by the want of that degree of care and prudence which a skilful and prudent master of such a vessel would exercise in similar circumstances; or if, after she was stranded he neglected to use all reasonable means and exertions to save her from consequent wreck and destruction, the loss is not within the policy, and the plaintiff is not entitled to recover; but if the captain and crew were

competent, and all reasonable care was, in the first place, used to avoid the accident, and, after it occurred all reasonable care and exertions were used honestly and in good faith to prevent the wreck and destruction of the property and to save it for the benefit of the concerned, and it was, nevertheless, lost, then the loss is within the policy, and the plaintiff is entitled to recover.

THE COURT, also, on the prayer of the defendants, instructed the jury, that if the bar, on which the ship was stranded, was out of the due course of the voyage insured, and the deviation were either voluntary or produced by the want of skill in the navigation of the ship, or by the want of that degree of care and diligence on the part of the said master and crew which a prudent and skilful master and crew of such a vessel would use in like circumstances, the insurers are discharged.

Mr. Jones, for defendants, then prayed the court to instruct the jury, that if the master and crew, with such assistance as was offered and might have been obtained from the shore, could, by discharging the cargo, have got the ship over the bar, or if there was a reasonable prospect of so doing, they were bound to have made the experiment of so lightening the ship before they proceeded to dismantle her and treat her as irrecoverably lost; and if, in fact, it be found that the ship did float over the bar, and was safely anchored within, as soon as she was unloaded, and was then sold at auction for $1,000 and upwards; and if, in that situation it be found that the chances of saving her would have been increased by having kept her equipments on board, and by having preserved her in the best order for sailing that was practicable under all circumstances without dismantling her, then the jury may, and ought to presume that the loss was produced by so dismantling her before or at the time of unloading her; unless the jury shall be satisfied by the evidence, that it was, under all circumstances, impracticable to have retained her sails, rigging, tackle, and furniture on board, or such of her tackle and equipments as were necessary to enable her to put to sea and make a safe port, and that the stripping her of such equipments was, under all circumstances necessary to the preservation of the ship, or ought, under all circumstances to have been presumed by the master, in the exercise of a sound discretion, to have been necessary to that end.

But THE COURT (nem. con.) refused to give the instruction, having already instructed the jury, in effect, that the master and crew were bound to exercise that degree of care, skill, and diligence in the navigation of the said ship, and in the circumstances in which she was stranded, which a prudent and skilful master and crew of such a vessel would have exercised in like circumstances;

and because the court is required to instruct the jury upon a question or act depending upon nautical skill, upon which the court could not give an opinion without consulting persons skilled in nautical matters.

Mr. Swann, for defendants, then prayed the court to instruct the jury, that if, from the evidence, they should be satisfied that no survey was had, or requested to be had by the master of the said ship while she was upon the bar, and that if they should be further satisfied from the evidence that the master had been advised that she might be gotten off at an expense of one or two hundred dollars, and that assistance had been repeatedly offered to him to get her off from the bar into the open sea, then the omission of the master to make the said attempt was evidence of negligence on his part sufficient to justify the jury in finding a verdict for the defendants.

But THE COURT (THRUSTON, Circuit Judge, absent) refused to give the instruction; being of opinion that the question of negligence was a question to be left to the jury under all the circumstances of the case as they appear from the evidence.

Verdict for the plaintiff for the amount insured.

Mr. Swann, for defendants, moved in arrest of judgment,

1st. Because the suit was brought in the name of Thomas H. Howland, for his individual use, upon a policy set forth in the declaration for the joint benefit of him and John Jackson; and

2d. Because the verdict has given the whole amount of the sum insured upon a declaration in which it is apparent that the plaintiff was entitled to but one half.

3. Because the suit is misconceived; it appearing by the declaration that the contract was a joint, and not a separate contract.

Mr. Swann also moved for a new trial on the ground that the verdict was against the weight of evidence, and because it was for the whole amount insured.

But THE COURT (THRUSTON, Circuit Judge, absent) overruled both motions.